THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CV-00161-DAN

| | | |
|---|---|---|
| PROGRESSIVE SOUTHEASTERN<br>INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| WILLIAM W. McLEOD and | ) | |
| KARON McLEOD, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court following a bench trial held on November 18, 2011 in Wilmington, North Carolina. Plaintiff Progressive Southeastern Insurance Company ("Progressive"), an insurance carrier which is in the business of providing automobile insurance, filed the Complaint [DE-1] in this action on October 3, 2008, seeking a declaratory judgment that a policy of automobile insurance issued by Progressive to Defendant Karon McLeod ("Mrs. McLeod") provided combined uninsured/underinsured motorists insurance coverage ("combined UM/UIM coverage") subject to limits of $50,000 per person and $100,000 per accident arising out of a March 30, 2008 automobile accident. Mrs. McLeod and Defendant William W. McLeod (collectively, "the McLeods"), through their Answer [DE-7], seek a declaration that Progressive is required to provide combined UM/UIM coverage subject instead to a limit of $1,000,000.

Based on the evidence presented at trial and the stipulations agreed to by the parties, the Court makes the following findings of fact:

1. Sometime in 2003, Mrs. McLeod contacted Harbor Isle Insurance Agency ("Harbor Isle"), an independently licensed insurance agency, regarding placing her family's automobile insurance business with the agency.

2. As a result, Mrs. McLeod applied for and Harbor Isle initially issued a policy of automobile insurance underwritten by Orion Insurance Company.

3. Later that year, Mrs. McLeod was contacted by a representative of Harbor Isle regarding switching her policy to another carrier. She was instructed to come into Harbor Isle's offices to complete an application to switch her policy to Progressive.

4. As a result, on November 25, 2003, Ms. McLeod went to the offices of Harbor Isle over her lunch hour, at which time she was presented documentation to sign in order to complete the application for automobile insurance with Progressive. Mrs. McLeod signed the documentation and was provided with signed copies.

5. The Court finds as fact the foregoing chain of events based on the testimony of Mrs. McLeod, whom the Court finds to be credible.

6. Progressive issued a policy of automobile insurance to Mrs. McLeod as Policy #11001677-8 (hereinafter "the Policy"), with an effective date of December 3, 2003.

7. The Policy, as written, provided for bodily injury liability coverage subject to limits of $50,000 per person and $100,000 per accident, as well as combined UM/UIM coverage subject to limits of $50,000 per person and $100,000 per accident.

8. In signing the application for the Policy, Mrs. McLeod acknowledged and agreed to its contents and signed an applicant's statement which read, in relevant part: "Liability Coverage, Uninsured Motorists Coverage, Combined Uninsured/Underinsured Motorists

2

Coverage, and the applicable limits of these coverages were explained to me, and I have selected the limits shown." *See* Pl.'s Trial Ex. 2 at 5.

9. On March 30, 2008, Defendants' natural daughter, Annie McLeod, sustained fatal injuries as a result of an automobile accident. That accident was caused by the negligence of the driver of a second automobile, who had no applicable automobile liability insurance.

10. The Policy was in effect and continuously renewed up to and including March 30, 2008, at the same policy limits. The policy in effect at the time of the accident was the eighth renewal of the Policy.

11. Annie McLeod was an insured person under the terms of the Policy for purposes of UM coverage at the time of the accident.

12. The McLeods made a claim for UM coverage under the Policy for damages arising out of the March 30, 2008 accident, for which Progressive has paid, and the McLeods have accepted, $50,000, without prejudice to the claims at issue in this action.

13. The McLeods now contend that Progressive is in fact required to provide $1,000,000 in UM coverage under the Policy, due to its failure to produce a copy of a form promulgated by the N.C. Rate Bureau, signed by Mrs. McLeod, indicating that Mrs. McLeod was provided an opportunity to select combined UM/UIM coverage in an amount greater than $50,000 per person and $100,000 per accident (a "UM/UIM selection/rejection form"), as required by N.C. Gen. Stat. § 20-279.21(b)(3) and (4) (2002).

14. Neither Mrs. McLeod nor representatives of Progressive or Harbor Isle can currently locate a signed copy of a UM/UIM selection/rejection form relating to the Policy.

15. Richard Prevatte ("Mr. Prevatte"), a representative of Harbor Isle, gave testimony regarding his usual business practices which indicated that Mrs. McLeod would have

3

signed a UM/UIM selection/rejection form at the time she executed the application for the Policy. For example, he testified that he always sat down at his desk with the insured, circled the policy number, and proceeded to go through the entire application, including the combined UM/UIM coverage selection process, with them.

16. Mr. Prevatte's testimony is not reconcilable with Mrs. McLeod's version of events regarding her execution of the Policy, which the Court has already found to be credible. For example, while Mr. Prevatte has no specific recollection of dealing with Mrs. McLeod, Mrs. McLeod testified that she signed the Policy application at the front desk of Harbor Isle's offices, and did not sit down with Mr. Prevatte and review the Policy. In addition, though Mr. Prevatte testified that he always circled the policy number on a new insurance application, the policy number was not circled on any copies of the Policy. Therefore, the Court does not find Mr. Prevatte's testimony to be credible.

17. Tiffany Burton ("Ms. Burton"), a litigation underwriting specialist at Progressive, gave testimony which indicated that the Progressive computer system was designed so that a blank UM/UIM selection/rejection form would have printed automatically with Mrs. McLeod's application. The Court finds Ms. Burton's testimony to be credible, but insufficient to establish that Mrs. McLeod ever *signed* a UM/UIM selection/rejection form.

18. Therefore, the Court concludes that no UM/UIM selection/rejection form was ever signed by Mrs. McLeod relating to the Policy.

19. Furthermore, Mrs. McLeod testified that, in procuring automobile insurance, she wished to keep costs down by choosing the lowest required coverage and understood that greater combined UM/UIM coverage limits would have resulted in higher premiums. In addition, subsequent to the accident, the McLeods continued to renew the Policy at the same policy

4

limits, including combined UM/UIM coverage subject to limits of $50,000 per person and $100,000 per accident, despite being on notice since at least the time that the complaint was filed in this action of their ability to select or reject different coverage limits. Therefore, Mrs. McLeod intended to select combined UM/UIM coverage limits of $50,000 per person and $100,000 per accident.

Based on the foregoing findings of fact and applicable legal standards, the Court makes the following conclusions of law:

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Venue is proper, and all parties have been correctly designated.

2. The parties have, pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c), consented to magistrate judge jurisdiction.

3. The Court, sitting in diversity, is constrained to apply North Carolina substantive law.

4. Automobile insurance policies are regulated by the state of North Carolina and must comply with the North Carolina Motor Vehicle Safety and Financial Responsibility Act ("the Act").

5. The pertinent section of the Act at all times relevant to this action, provided:

> No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein with supplemental thereto, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motorist vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, in an amount not to be less than the financial responsibility amounts for bodily injuries as set forth in G.S. 20-279.5 nor greater than one million

5

dollars ($1,000,000), as selected by the policy owner. . . . The coverage required under this subdivision is not applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. *If the named insured in the policy does not reject uninsured motorist coverage and does not select different coverage limits, the amount of uninsured motorist coverage shall be equal to the highest limit of bodily injury and property damage liability coverage for any one motor vehicle in the policy.* Once the option to reject the uninsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless the named insured makes a written request to exercise a different option. The selection or rejection of uninsured motorist coverage or the failure to select or reject by a named insured is valid and binding on all insureds and vehicles under the policy. *Rejection of or selection of different coverage limits for uninsured motorist coverages for policies under the jurisdiction of the North Carolina Rate Bureau shall be made in writing by a named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.*

N.C. Gen. Stat. § 20-279.21(b)(3) (2002) (emphasis added).

6. N.C. Gen. Stat. § 20-279.21(b)(4) (2002) is in all relevant respects the same, except in that it addresses underinsured motorists.

7. As a result, at the time the Policy was issued, insurance carriers were obligated to comply with the requirement that the selection or rejection by an insured of combined UM/UIM coverage must be in writing on a UM/UIM selection/rejection form promulgated by the N.C. Rate Bureau. The Act, including these provisions, is remedial in nature. *Hendrickson v. Lee*, 459 S.E.2d 275, 278 (N.C. App. 1995). The burden of proof to demonstrate that an insured signed such a form rests on the insurance carrier. *Id.* at 279.

8. Progressive has not met its burden of proof to demonstrate that Mrs. McLeod signed a copy of a UM/UIM selection/rejection form, and, accordingly, the Court has concluded that no such form was ever signed by Mrs. McLeod.

6

9. The North Carolina Court of Appeals held in *Williams v. Nationwide Mut. Ins. Co.*, 621 S.E.2d 644 (N.C. Ct. App. 2005), that a "total failure" on the part of an insurance carrier to provide an insured with an opportunity to select or reject UIM coverage limits in amounts different than the bodily injury liability limits would compel a court to declare that the UIM coverage limit under the policy is the maximum $1,000,000 provided for by N.C. Gen. Stat. § 20-279.21(b)(4). This holding is hereinafter referred to as "the *Williams* doctrine."

10. This Court, sitting in diversity, is not bound by the precedent of the North Carolina Court of Appeals, but rather must adjudicate the issues before it consistent with the precedent of the North Carolina Supreme Court and, where no such precedent exists, predict how the North Carolina Supreme Court would rule if presented with the issue. *See Wells v. Liddy*, 186 F.3d 505, 527-28 (4th Cir. 1999).

11. The *Williams* doctrine has been considered by several subsequent panels of the North Carolina Court of Appeals, but has never been directly addressed by the North Carolina Supreme Court. *See, e.g., Nationwide Mut. Ins. Co. v. Burgdoff*, 698 S.E.2d 500 (N.C. Ct. App. 2010); *North Carolina Farm Bureau Mut. Ins. Co. v. Jenkins*, 700 S.E.2d 434 (N.C. Ct. App. 2010); *Nationwide Prop. & Cas. Ins. Co.*, 701 S.E.2d 390 (N.C. Ct. App. 2010); *Unitrin Auto and Home Ins. Co. v. McNeill*, 716 S.E.2d 48 (N.C. Ct. App. 2011); *Hart v. Perez*, 2011 WL 533709 (N.C. Ct. App. Feb. 15, 2011); *Davis v. State Farm Mut. Automobile Ins. Co.*, 2011 WL 2462883 (N.C. Ct. App. Jun. 21, 2011).

12. However, in *Nationwide Mut. Ins. Co. v. Fortin*, 513 S.E.2d 782 (N.C. 1999), which predated *Williams*, the North Carolina Supreme Court did consider the consequences of an

insurance carrier's failure to offer an insured an appropriate opportunity to select or reject UIM coverage limits in amounts different than the bodily injury liability limits.

13. In *Fortin*, the North Carolina Supreme Court found that an insurance carrier had not obtained a valid UM/UIM selection/rejection form. However, the North Carolina Supreme Court, in construing N.C. Gen. Stat. § 20-279.21(b)(4), found that the insurance carrier was not therefore required to provide $1,000,000 to the insured, and instead required only that the insurance carrier provide UIM coverage equal to the bodily injury liability limits of the policy.

14. The *Williams* doctrine is predicated on the notion that a "total failure" on the part of an insurer to provide an insured with the opportunity to select or reject their own UM/UIM coverage limits should invoke a remedial coverage limit greatly in excess of the statutory minimum coverage limits. However, the Court concludes that, here, applying the *Williams* doctrine so as to require Progressive to afford UM coverage subject to a limit of $1,000,000 under the Policy would be in conflict with the plain language of N.C. Gen. Stat. § 20-279.21(b)(3) and the existing precedent of the North Carolina Supreme Court, as articulated in *Fortin*.

15. Furthermore, given the Court's finding that Mrs. McLeod intended to select limits of $50,000 per person and $100,000 per accident, the remedial intent of the Act would not be served by giving the McLeods a windfall of $1,000,000 based solely on the fact that Mrs. McLeod did not sign a UM/UIM selection/rejection form. To the contrary, an insured's actual choice of bodily injury limits is the best indicator of the level of UM/UIM coverage limits that the insured would have chosen had the opportunity been provided. Thus, the imputation of bodily injury limits, in the absence of a UM/UIM selection/rejection form,

8

serves the remedial purpose of the statute by affording coverage to the insured at a level consistent with his or her known coverage choice.

16. As a result, the Court finds that Progressive is not obligated to provide $1,000,000 in UM coverage under the Policy for damages arising out of the March 30, 2008 accident. Instead, Progressive is only obligated to provide UM coverage subject to the limits stated in the Policy, namely, $50,000 per person and $100,000 per accident.

17. The McLeods' claim for UM benefits under the Policy relates solely to the injuries sustained by Annie McLeod, and, therefore, the $50,000 per person UM coverage limit applies.

18. Progressive has already paid and the McLeods have accepted $50,000 in UM coverage under the Policy. Progressive has therefore fulfilled its obligation under the Policy for the McLeods' claim for UM coverage arising out of the March 30, 2008 accident and is entitled to declaratory judgment in its favor.

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law, it is hereby **ADJUDGED** that Defendants Karon McLeod and William W. McLeod are entitled to $50,000 in UM coverage under the Policy. This amount having been paid by Plaintiff Progressive Southeastern Insurance Company to Defendants heretofore, Defendants shall have and recover nothing more. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff and close the case.

This the 5ᵗʰ day of December, 2011.

DAVID W. DANIEL
United States Magistrate Judge

9